UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> $179,100.00 UNITED STATES ) <br> CURRENCY, ) <br> ) <br> Defendant. ) <br> ────────────────────────── ) <br> ) <br> David Waite, ) <br> ) <br> Claimant. ) | No. 1:19-cv-02237-JPH-TAB |

**ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

The government seeks summary judgment on its complaint of forfeiture in rem against $179,100 that was recovered from David Waite at the Indianapolis International Airport. Mr. Waite has not responded to the government's motion for summary judgment. Because the government has shown by a preponderance of the evidence that the property is subject to forfeiture, its motion for summary judgment is **GRANTED**.

**I.
Facts and Background**

Because the United States has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

1

Mr. Waite has not responded to the government's motion for summary judgment, so the Court treats the government's supported factual assertions as uncontested. S.D. Ind. L.R. 56.1(b); *see e.g.*, *Smith v. Lamz*, 321 F.3d 680, 883 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission.").

On September 16, 2018, Mr. Waite was at the Indianapolis International Airport for a flight to California. Dkt. 23-1 at 3 (Babcock Decl. ¶ 4). While going through security, an x-ray alert tagged Mr. Waite's bag as suspicious. *Id.* This prompted Transportation Security Administration ("TSA") to open and inspect the bag, and in doing so they discovered children's clothing, two accordion files, and more than 25 manila envelopes used to conceal $179,100 ("Defendant Currency"). *Id.* at 3–4 (¶¶ 4, 8). Both accordion files contained numerous manilla envelopes, each of which contained at least two white letter-sized envelopes. *Id.* at 5 (¶ 9). The white letter-sized envelopes contained stacks of rubber-banded twenty, fifty, and hundred-dollar bills. *Id.*

TSA officials also found billing and account notices directed to 541 Holdings LLC or Hanover Properties LLC. *Id.* at 4 (¶ 8). All billing and account documents were between two and three years old, with the most recent dated August 2016. *Id.* Investigation into three bank accounts associated with Mr. Waite showed that two of the accounts were business accounts for Hanover Properties, LLC. *Id.* at 6 (¶ 14). Analysis of the bank records showed a pattern of large cash and check deposits being made into all three accounts. *Id.* (¶ 15).

After completing their search of the suitcase, TSA contacted the Department of Homeland Security ("DHS"). *Id.* at 3 (¶ 4).

Before arriving at the airport, DHS ran Mr. Waite's criminal history and found that he had several prior convictions related to the possession and sale of controlled substances. *Id.* at 3–4 (¶ 5); dkt. 23-3. DHS was also informed that, in October 2017, Mr. Waite had traveled through Indianapolis International Airport with approximately $55,000 in cash inside his carry-on luggage. *Id.* at 4 (Babcock Decl. ¶ 6). In addition, the United States Drug Enforcement Agency ("DEA") had provided DHS officials with information linking Mr. Waite to marijuana trafficking between California and New York. *Id.* (¶ 7).

Upon arriving at the airport, DHS officers responded to the baggage claim area, where the suitcase was being held. *Id.* at 5 (¶ 9). DHS determined there was probable cause that the Defendant Currency was proceeds of or property used to facilitate a controlled substance offense, or was property involved in a money laundering transaction and seized the currency. *Id.* The finding of probable cause was based on the way the large amount of currency was packaged and concealed, Mr. Waite's criminal history and history of traveling with large amounts of currency, the prior DEA intelligence, and the lack of any apparent connection between the documents in Mr. Waite's suitcase and the currency. *Id.*

The day after the Defendant Currency was seized, a narcotics detection canine gave a positive alert to the odor of a controlled substance on the

3

location of the bag containing the Defendant Currency. *Id.* at 6 (¶ 12). DHS then notified Mr. Waite of the agency's intent to pursue administrative forfeiture of the seized money. *Id.* at 7 (¶ 17).

On December 7, 2018, DHS received Mr. Waite's claim to the money. *Id.* (¶ 18). He stated that, at the time of the seizure, he was traveling from Indianapolis to California "in order to buy a property." Dkt. 23-4; dkt. 23-1 at 7 (Babcock Decl. ¶ 18). No other claims or petitions were received for the Defendant Currency. Dkt. 23-1 at 7 (Babcock Decl. ¶ 19).

On June 5, 2019, the United States brought this *in rem* action against the seized money, seeking its forfeiture. Dkt. 1. Through counsel, Mr. Waite filed an answer to the complaint and a claim to the money, dkt. 7; 9, but his counsel later withdrew, dkt. 20; 21. The United States filed a motion for summary judgment. Dkt. 23. Mr. Waite did not appear for a court ordered settlement conference or respond to the government's motion for summary judgment.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

The Controlled Substances Act makes subject to forfeiture "all moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . ., all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate [such an exchange.]" *Id.* (quoting *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004)); 21 U.S.C. § 881(a)(6). When, as here, the United States' theory is that the property was used to commit or facilitate a criminal offense, or was otherwise involved in a criminal offense, the United States must show a "substantial connection" between the property and the offense. 18 U.S.C. § 983(c)(1), (3). To prevail on summary judgment, "the government must demonstrate by a preponderance of the evidence that the property sought is subject to forfeiture." *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005).

The United States argues that it is entitled to summary judgment because the evidence shows that the Defendant Currency was intended to be

used to facilitate a violation of the Controlled Substances Act or was involved in a money laundering transaction.[1]  Dkt. 24 at 2.

The government has designated evidence of a large pattern of cash and check deposits being made into three Wells Fargo Bank accounts associated with Mr. Waite, dkt. 23-1 at 6 (Babcock Decl. ¶ 15), which is "indicative of funnel account activity and money laundering."  *Id.* ¶ 16; *see also United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991) ("Reasonable jurors could certainly infer that the cash contained in the deposits [defendant] made . . . were derived in a large extent from [his] drug operations.").  The designated evidence does not show a verifiable source of income for this amount of money. *See Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 468.  And, according to a bank referral, one of these deposits, a February 2016 cash deposit of $3,000, smelled of marijuana.  Dkt. 23-1 at 6 (Babcock Decl. ¶ 15).  Finally, "suspicious debit purchases for travel and shipping were consistent with activities to facilitate the interstate movement of controlled substances."  *Id.* (¶ 16).

The government next designates evidence that Mr. Waite's travel arrangements are suspicious, in part due to the lack of a legitimate reason for his trip.  DHS officials had received intelligence from DEA investigators linking Mr. Waite to marijuana trafficking between New York and California, *id.* at 4 (¶

---

[1] The government also moves to strike Mr. Waite's claim, arguing that he does not have standing to contest the forfeiture because he failed to respond to discovery requests.  Dkt. 24 at 13.  Because the government has shown that reasonable jurors would find it more likely than not that Mr. Waite's cash is subject to forfeiture, the Court declines to address this argument.

7), and California is a source state for marijuana and other controlled substances. *Id.*; *see Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 467 (citing *United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir. 1998) (giving weight to fact that claimant was traveling from California, "a drug source state")).

The government also designates evidence regarding Mr. Waite's criminal record and prior instances of travelling with a large amount of cash. In October 2017, Mr. Waite traveled through the Indianapolis airport with approximately $55,000 in bulk cash inside of his luggage. Dkt. 23-1 at 4 (Babcock Decl. ¶ 6). On this occasion, Mr. Waite told TSA personnel that the currency was to be used to purchase a house but that he had changed his mind. *Id.* Mr. Waite's criminal history, dkt. 23-2; dkt. 23-4; dkt. 23-1 at 3 (Babcock Decl. ¶ 5), includes several previous convictions relating to controlled substances. *Id.*; *see United States v. All Assets and Equipment of West Side Bldg. Corp.*, 58 F.3d 1181, 1189 (7th Cir. 1995) (noting that evidence of prior convictions for drug possession and trafficking "is certainly admissible" in a probable cause determination for the purposes of civil forfeiture). And while the designated evidence does not show that Mr. Waite was subsequently arrested or charged with a crime in connection with this incident, that is "of little consequence, especially when stacked up against all of the other factors in this case." *Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 469.

Finally, the government has designated evidence that a narcotics detection canine gave a positive alert to the odor of a controlled substance on the location of the bag with the Defendant Currency, dkt. 23-1 at 6 (Babcock Decl. ¶ 12), and Mr. Waite has not challenged this evidence. *See Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 463 (noting that claimant's time to challenge dog sniff evidence reliability is at the summary judgment stage).

The undisputed designated evidence shows that reasonable jurors would find it more likely than not that Mr. Waite's cash is subject to forfeiture as the proceeds of or property used to facilitate a controlled substance offense, or was property used in a money laundering transaction, and thus the government is entitled to summary judgment. *See id.* at 455.

## IV.
## Conclusion

The United States' motion for summary judgment is **GRANTED**. Dkt. [23]. The United States may move for a final order of forfeiture.

**SO ORDERED.**

Date: 3/26/2021

Distribution:

All Electronically Registered Counsel

David Waite
702 Mangrove Avenue #177
Chico, CA 95926

David Waite
8287 Sherwood Boulevard
Los Molinos, CA 96055

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana